NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PATRICK ZUILI,**
*Appellant*

**v.**

**GOOGLE LLC,**
*Appellee*

---

2017-2161, 2017-2258, 2017-2267

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. CBM2016-00008, CBM2016-00021, CBM2016-00022.

---

Decided: February 9, 2018

---

PATRICK ZUILI, Boca Raton, FL, pro se.

ANDREW JOHN PINCUS, Mayer Brown LLP, Washington, DC, for appellee. Also represented by PAUL WHITFIELD HUGHES, SAQIB SIDDIQUI, JONATHAN WEINBERG; ROBERT G. PLUTA, Chicago, IL.

---

Before PROST, *Chief Judge*, REYNA and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellee Google LLC ("Google") filed petitions with the U.S. Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB"), seeking covered business method ("CBM") patent review of claims 1–3, 6, 10, 14–15, 18–19, and 21 of U.S. Patent No. 7,953,667 ("the '667 patent"), claims 1–3, 5–6, 10–11, 14–15, and 17 of U.S. Patent No. 8,326,763 ("the '763 patent"), and claims 1, 5, 9, and 11 of U.S. Patent No. 8,671,057 ("the '057 patent") (collectively, "the Asserted Claims") (collectively, "the Patents-in-Suit"). The Patents-in-Suit teach a method and system that relate to identifying invalid or illegitimate "impressions" and "clicks" for online "pay-per-click" and "pay-per-impression" advertisers.[1] '057 patent, Abstract; *see* '667 patent, Abstract; '763 patent, Abstract.

The PTAB issued three final written decisions in which it found, inter alia, (1) the Patents-in-Suit eligible for CBM review pursuant to the Leahy-Smith America Invents Act ("AIA"), Pub L. No. 112-29, § 18, 125 Stat. 284, 329–31 (2011); and (2) the Asserted Claims directed to patent-ineligible subject matter under 35 U.S.C. § 101 (2012).[2] *See Google Inc. v. Zuili* (*Google I*), No. CBM2016-00021, 2017 WL 2080392, at *20 (P.T.A.B. May 5, 2017) ('667 patent); *Google Inc. v. Zuili* (*Google II*), No. CBM-2016-00022, 2017 WL 2116956, at *19 (P.T.A.B. May 5, 2017) ('763 patent);[3] *Google Inc. v. Zuili* (*Google III*), No.

---

[1]     Pay-per-click is "when advertisers pay upon users actually clicking," and pay-per-impression is "when advertisers pay based on number of views." '057 patent, Abstract.

[2]     Congress did not amend § 101 when it passed the AIA. *See generally* Pub. L. No. 112-29, 125 Stat. 284.

[3]     Because of the similarities between the specifications of the '763 and '667 patents and the nearly identical nature of the PTAB's reasoning in *Google I* and *Google II*,

CBM2016-00008 (P.T.A.B. Apr. 24, 2017) ('057 patent) (Appellee's App. 1000–37). Appellant Patrick Zuili appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A) (2012). We affirm.

## DISCUSSION

Mr. Zuili has three primary contentions on appeal, arguing (1) the Patents-in-Suit are not eligible for CBM review, *see* Appellant's Br. 51–63, (2) the PTAB erred in finding the Asserted Claims patent-ineligible under § 101, *see id.* at 63–72, and (3) the overall integrity of the PTAB proceedings may be compromised, *see, e.g.*, *id.* at 18–36, 93–96. We address each argument in turn.

## I. Eligibility for CBM Review

"CBM review is limited to patents 'that claim a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions.'" *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1338 (Fed. Cir. 2016) (quoting Pub. L. No. 112-29, § 18(d)(1), 125 Stat. at 331). In evaluating whether a patent falls within the technological invention exception, the PTAB considers "whether the claimed subject matter as a whole recites a technological feature that is novel and unobvious over the prior art; and solves a technical problem using a technical solution." 37 C.F.R. § 42.301(b) (2017). We have reviewed the PTAB's interpretation of the language of AIA § 18(d)(1) in *Google I–III* and determine that it accords with our case law. *See Google II*, 2017 WL 2116956, at *4–5, *7–8; Appellee's App. 1006–11, 1013–14. Accordingly, "[w]e review the

---

for ease of reference we cite only to the '763 patent and *Google II* when referring to either patent or their related proceedings, unless otherwise noted.

[PTAB]'s reasoning" in its application of the CBM statute "under the arbitrary and capricious standard and its factual determinations under the substantial evidence standard." *Blue Calypso*, 815 F.3d at 1339.

The PTAB determined that claim 1 of each of the Patents-in-Suit meets the financial product or service requirement because the claimed method detects fraudulent clicks for the financial activity of pay-per-click advertising. *See Google II*, 2017 WL 2116956, at *5 (citing '763 patent col. 1 ll. 35–47) ("We find . . . that a pay-per-click system provides advertising of goods and services, for payment of money[, and thus] is itself a financial product and provides a financial service."); Appellee's App. 1012–13 (citing '057 patent col. 1 ll. 28–31, 48–61, col. 3 ll. 2–5) ("[W]e find . . . each valid click is a transaction for which the merchant is charged a fee and each invalid click is a fraudulent transaction that should be deducted from the merchant's invoice.").[4] The PTAB also found the statute's technological invention exception does not save any of the Patents-in-Suit from CBM review because (1) the '057 patent is directed to the "business problem" relating to "undesirable level[s] of expenditure on the part of the merchant [caused] by [user] over-clicking" rather than using a "technical solution" to solve a "technical problem,"

---

[4]    To arrive at this conclusion, the PTAB found the preambles of claim 1 of each of the Patents-in-Suit to be limiting. *See Google II*, 2017 WL 2116956, at *6; Appellee's App. 1011–12. Although Mr. Zuili argues that none of the claims' preambles are limiting, *see* Appellant's Br. 53–54, 59, we have independently reviewed the specification (including the claims) of the Patents-in-Suit and find that the relevant preambles are limiting, *see Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (setting forth the standards to determine if a preamble is limiting).

Appellee's App. 1015–16 (internal quotation marks omitted) (quoting '057 patent col. 1 ll. 49–50), and (2) the '667 and '763 patents "do[] not recite a technological feature that is novel and unobvious over the prior art," *Google II*, 2017 WL 2116956, at *10; *see id.* at *8–9 (citing, inter alia, '763 patent col. 1 ll. 34–37, col. 2 ll. 13–19; Appellee's App. 1694–97 (testimony of Google's expert, Stephen Gray)). We do not detect error in the PTAB's findings or reasoning and, therefore, conclude that the Patents-in-Suit are CBM patents eligible for review.

## II. Patent Eligibility Under 35 U.S.C. § 101

Under § 101, a patent claim is ineligible if "(1) it is 'directed to' a patent-ineligible concept," such as an "abstract idea," and "(2), if so, the particular elements of the claim, considered 'both individually and "as an ordered combination,"' do not add enough to '"transform the nature of the claim" into a patent-eligible application.'" *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014)). We review § 101 determinations de novo. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1312 (Fed. Cir. 2016).

We hold that the Asserted Claims are directed to the abstract idea of collecting, transmitting, analyzing, and storing data to detect fraudulent and/or invalid clicks based on the time between two requests by the same device or client. *See, e.g.*, '057 patent col. 5 ll. 17–37 (claim 1); '667 patent col. 2 l. 61–col. 3 l. 15 (claim 1), col. 3 ll. 46–61 (claim 10), col. 4 ll. 12–30 (claim 14), col. 4 ll. 42–60 (claim 18); '763 patent col. 2 l. 59–col. 3 l. 8 (claim 1), col. 3 ll. 37–50 (claim 10), col. 4 ll. 17–30 (claim 14).[5] We previously have determined that similar claims

---

[5] We cite only to the independent claims of the Patents-in-Suit because "[Mr. Zuili] has not separately

are directed to patent-ineligible subject matter. *See, e.g.*, *Elec. Power*, 830 F.3d at 1353 (finding claims that, inter alia, "collect[]" and "analyz[e]" information directed to abstract ideas); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 609 (Fed. Cir. 2016) (finding claims that, inter alia, "transmit[]" digital images directed to the "abstract idea of . . . storing digital images"). Moreover, although we have stated that claims "purporting to improve the functioning of the computer . . . might not succumb to the abstract idea exception," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016), the Asserted Claims recite the use of generic computer components performing conventional activities to carry out the claimed invention, *see, e.g.*, '057 patent col. 5 ll. 18–19 ("web page" and "computing device"), 22 (use of conventional "code" without explaining further), 26 ("communication network"); '667 patent col. 2 l. 63 ("search engine"), col. 3 ll. 3–4 ("plurality of links associated with a plurality of websites"); '763 patent col. 3 ll. 40–43 (discussing "client side" and "server side" devices); Appellee's App. 1695–97 (providing a statement by Mr. Gray that "the claimed components are *generic* computer components" and that certain claims "recite *generic* computing features" (emphases added)); *cf. In re TLI Commc'ns*, 823 F.3d at 612 (finding claims "directed to the use of conventional or generic technology in a nascent but well-known environment" do not survive *Alice* step one).

The Asserted Claims do not recite an inventive concept. When claims, such as the Asserted Claims, are "directed to an abstract idea" and "merely requir[e] generic computer implementation," they "do[] not move into

argued the patent eligibility of the dependent claims and thus has waived any argument that those claims should be analyzed separately." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1264 n.4 (Fed. Cir. 2016).

[§] 101 eligibility territory." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (internal quotation marks and citation omitted); *see BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (recognizing that claims directed to an abstract idea that add "the requirement to perform it on the Internet" do not state an inventive concept). We have considered Mr. Zuili's remaining § 101 arguments and conclude that the Asserted Claims are not patent eligible.

### III. Integrity of the PTAB Proceedings

Mr. Zuili asserts various theories that the integrity of the PTAB proceedings have been tainted. *See, e.g.*, Appellant's Br. 18–36, 93–96. We have independently reviewed Mr. Zuili's claims in light of the record but find his claims insufficiently supported. For instance, Mr. Zuili avers that the USPTO's Director sought to improperly influence the PTAB proceedings by stacking the judges on the CBM panel to Mr. Zuili's detriment, *see, e.g.*, *id.* at 10–12; however, the USPTO's Director has delegated the authority to assign PTAB panels, *see* Manual of Patent Examining Procedure § 1002.02(f)(3) (9th ed. Rev. 8, Jan. 2018); *see also* 35 U.S.C. § 6(c), and Mr. Zuili has not presented evidence to contradict the PTAB panel's statement that it acted "independently," *Google II*, 2017 WL 2116956, at *17 (internal quotation marks and citation omitted). Similarly, Mr. Zuili claims the PTAB erred in relying on certain testimony submitted to support Google because the declarants were not reliable due to "inherent conflict[s] of interest[]," Appellant's Br. 20, but Mr. Zuili candidly admitted to the PTAB that he "can't prove" his allegations, Appellee's App. 1545; *see id.* at 1542. Accordingly, we reject Mr. Zuili's unsupported accusations.

### CONCLUSION

We have considered Mr. Zuili's remaining arguments and find them unpersuasive. Accordingly, the Final

Written Decisions of the U.S. Patent and Trademark Office's Patent Trial and Appeal Board are

**AFFIRMED**

COSTS

Each party shall bear its own costs.